FILED

2006 Sep-20  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **EDMOND FLAIG, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:06-102-VEH** |
| | ) | |
| **CITY OF HANCEVILLE,** | ) | |
| **ALABAMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## MEMORANDUM OPINION

The case is before the Court on the Motions to Dismiss filed by each Defendant (docs. 35, 37, 39, 42, 44, and 46) and a Motion for Sanctions filed by Defendants the City of Hanceville, Alabama, and Katie Whitley.  Flaig, who is represented by counsel, neglected to respond to the Motions to Dismiss or the Motion for Sanctions.  Under the circumstances, the Court can only conclude that the Motions are unopposed, and that Flaig has waived the right to be heard in opposition to same.

A number of federal courts have declared that a motion to dismiss may be properly granted under these circumstances without reaching the merits, based on the theory that (i) plaintiff's failure to respond operates as a concession that the motion

should be granted, or (ii) dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders. *See Fox v. American Airlines, Inc.,* 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (finding no error where district court granted motion to dismiss based on reasoning that plaintiffs' failure to respond to motion within prescribed time renders motion conceded); *Pomerleau v. West Springfield Public Schools,* 362 F.3d 143, 145 (1st Cir. 2004) (citing authority for proposition that court may treat failure to respond to motion to dismiss as procedural default where court had ordered response, unless granting motion would offend equity or conflict with federal rules); *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3rd Cir. 1991) (explaining that if a party represented by counsel fails to respond to a motion to dismiss, district court may treat motion as unopposed and subject to dismissal without merits analysis).

However, these authorities are not unanimous. *See Issa v. Comp USA,* 354 F.3d 1174, 1178 (10th Cir. 2003) ("even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted"); *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210, 213 (5th Cir. 1976) (holding that plaintiff's initial failure to respond to motion to dismiss and subsequent failure to respond after express order to do so

within ten days were insufficient grounds for dismissal).

In the wake of a thorough review of the foregoing authorities and with due regard for the status of *Boazman* as binding authority, the Court deems it proper to consider the Motions to Dismiss on the merits, notwithstanding Flaig's failure to respond.  That said, "the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her." *Pinto v. Universidad De Puerto Rico,* 895 F.2d 18, 19 (1st Cir.1990); *see also Lyes v. City of Riviera Beach, Fla.,* 126 F.3d 1380, 1388 (11th Cir.1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.,* 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

For the reasons hereinafter set forth, Defendants' Motions to Dismiss are due to be **GRANTED**.  The Motion for Sanctions is due to be **DENIED**.

### Procedural History

Plaintiffs, Edmond Flaig and The Trinity News (hereinafter "Flaig"), commenced this action pro se on January 17, 2006.  The complaint was virtually

3

unintelligible; however, the Court ascertained that Flaig brought this action pursuant to 11 U.S.C. § 525 and 42 U.S.C. § 1983, alleging that the defendants acted and conspired to: (1) deprive "the plaintiff" of [his] Constitutionally protected rights of free exercise of religion (Count One); (2) deprive "the plaintiff" of [his] Constitutionally protected rights of free speech and of the press (Count Two); (3) unlawfully arrest and detain the plaintiff (Count Two); (4) interfere with the business relationships of "the plaintiff" (Count Three); (5) "criminally investigate" "the plaintiff" based on his religion (Count Four); (6) fail to advertise certain municipal resolutions and ordinances in violation of Code of Alabama, 1975, §11-45-8 (Count Five); (7) intentionally inflict emotional distress (Count Six); and (8) defame Plaintiff (Count Seven).  The Court determined that the complaint, as plead, constituted an impermissible "shotgun" pleading which failed to conform to the Federal Rules of Civil Procedure.  On March 8, 2006, Flaig was ordered to file an amended complaint "that complies with Rules 8 and 10 and also complies with the heightened specificity required in civil rights actions against public officials who may be entitled to qualified immunity."  Flaig subsequently retained counsel and filed an amended complaint on April 7, 2006.

The amended complaint contains no allegations about whether "The Trinity News" is a type of entity recognized by law.  After the first sentence, all allegations

are to "the Plaintiff" [singular]. The Defendants are the City of Hanceville, Alabama; Katie Whitley, individually and in her official capacity as Mayor of the City of Hanceville, Alabama; Craig Richie, individually and in his official capacity as Police Chief of the City of Hanceville, Alabama; Chris A. Pearce, individually and in his official capacity as a police officer for the City of Hanceville, Alabama; the City of Arab, Alabama; and Brian Mathews, individually and in his official capacity as a police officer for the City of Arab, Alabama.

Defendants individually filed the Motions to Dismiss and the Motion for Sanctions presently before this Court. A thorough review of Flaig's amended complaint provides some insight into Flaig's claims against the Defendants.

Despite the fact Flaig's Amended Complaint is still virtually unintelligible, the Court has deduced that Flaig brings this action pursuant to 11 U.S.C. § 525 and 42 U.S.C. § 1983, alleging that the Defendants acted and conspired to: (1) deprive "the plaintiff" of his Constitutionally protected right to equal protection under the law (Count One); (2) deprive "the plaintiff" of his Constitutionally protected right of free speech (Count Two); (3) deprive "the plaintiff" of his Constitutionally protected right of freedom of the press (Count Three); (4) deprive "the plaintiff" of his Constitutionally protected right to freedom of assembly (Count Four); (5) deprive "the plaintiff" of his Constitutionally protected right to freedom from unreasonable

search and seizure (Count Five); (6) deprive "the plaintiff" of his Constitutionally protected right to freedom from interference with business relations (Count Six); (7) facilitate and conduct a criminal investigation of "the plaintiff" on the basis of his religion (Count Seven); (8) restrict the publication or advertisement of certain municipal resolutions and ordinances as required by Code of Alabama, 1975, § 11-45-8 (Count Eight); (9) cause intentional infliction of emotional distress on "the plaintiff" (Count Nine); and (10) slander "the plaintiff" (Count Ten).  Each of these claims are asserted against the individual Defendants; however it is unclear whether the claims are being asserted against these Defendants in their official capacities, their individual capacities, or both.  So as not to unfairly limit the breadth of Flaig's Amended Complaint, the court will assume, for the purpose of analyzing the Motions to Dismiss, that Flaig has asserted all claims against the individual Defendants in both their official and individual capacities.

## Shotgun Pleadings

As an initial matter, the Court takes note that Flaig's amended aomplaint is no less a "shotgun" pleading than the previous complaint which was struck by this Court. In its March 8, 2006, Order, the Court stated:

> All parties are subject to the Federal Rules of Civil Procedure, including Rule 8, which requires a "short and plain statement of the claim ...." Although only sixteen pages long, the complaint, as plead, is virtually

unintelligible.  All counts allege all prior paragraphs.  All counts are alleged against all six defendants, but the defendants are referred to as a group, and statements of individual wrongs by individual defendants are few and far between.  Indeed, I could not find any actions claimed to have been taken by the City of Hanceville, Alabama, or the City of Arab, Alabama.  The acts alleged in the complaint are both vague and disparate,  cover disparate dates, and clearly could not be the actions of all defendants as to any specific act alleged.  "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, *see Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366-67 (11th Cir.1996), and is the type of complaint that [the Eleventh Circuit has] ... criticized time and again."   *Magluta v. Samples*, 256 F.3d 1282, 1284 -1285 (11th Cir. 2001).

Additionally, my "first task [in ruling upon a motion to dismiss] is to determine whether 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief.' In making this decision [I] must respect the rule that heightened specificity is required in civil rights actions against public officials who may be entitled to qualified immunity."  *Id.* (internal citations omitted).  This is impossible to do with a shotgun pleading of this type.

Armed with the Court's Order as a roadmap, Flaig was permitted thirty days within which to file an amended complaint which complied with Rule 8, Rule 10, and the heightened pleading requirement of § 1983 cases for which qualified immunity is a potential defense.  The amended complaint was timely filed, and is fraught with the same deficiencies which were present in Flaig's original complaint.

"Shotgun" complaints, such as Flaig's amended complaint, which lump all

defendants to an action into identical allegations of conclusory conduct are improper and result in a waste of valuable judicial resources. *See, e.g., Cramer v. State of Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints ... are altogether unacceptable ... [and] whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources."); *Anderson v. District Board of Trustees*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are plead clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the Court's ability to administer justice."). Despite the drain on a court's resources, a district court must trudge through a "shotgun" complaint in an attempt to narrow and define the issues to be adjudicated. *See Ebrahimi v. City of Huntsville Board of Education*, 114 F.3d 162, 165 (11th Cir. 1997) ("In [shotgun pleading] cases, it is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of litigation.").

_____However, in this case, the Court would be well within its discretion to dismiss this action as a sanction for Flaig's failure to comply with its March 8, 2006, Order

without reaching a decision on the pending motions to dismiss on their merits.  The

temptation to dismiss this action on that basis alone was tremendous due to the

virtually unintelligible amended complaint, the lack of response by Flaig to the

motions to dismiss, and the unreasonable burden shouldered on the Court's resources

when analyzing such a poorly plead amended complaint.  However, the Court resisted

the temptation, and fully analyzed, to the best of its ability, the Complaint and the

applicable law.

### The Motion to Dismiss Standard of Review

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond

a doubt that the Plaintiff can prove no set of facts in support of his claims which

would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In deciding

a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in

the complaint as true and construe the facts in a light most favorable to the non-

moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002)(citing

*GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).

"[U]nsupported conclusions of law or of mixed fact and law have long been

recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d

991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16

(11th Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the

Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)(emphasis in original)(citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)). "The threshold of sufficiency that a complaint must meet to survive a Motion to Dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)(quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

## **Facts**[1]

### A.    **The City Council meeting**

The Plaintiff (hereinafter " Flaig") ran for mayor of the City of Hanceville, Alabama (Pl. Am. Compl., ¶ 12).  However, in a runoff election, Katie Whitley ("Whitley") was elected (Pl. Am. Compl., ¶ 12).  At the February 28, 2005 City Council meeting, Flaig was "physically removed" by Officer Pearce ("Pearce") and Chief Craig Richie ("Richie") pursuant to the enforcement of Hanceville Local Ordinance 492 (Pl. Am. Compl., ¶ 24).  Ordinance 492 states that no one, not a member of the city council, shall verbally address the city council without first

---

[1]The court, as it must on a Rule 12(b)(6) motion to dismiss, has viewed all factual allegations in the light most favorable to the Plaintiffs.

requesting and securing the permission of the presiding officer (Pl. Am. Compl., ¶ 15).  Pearce and Richie caused Flaig to suffer contusions (Pl. Am. Compl., ¶ 25).

## B.    The Phone Call

On October 12, 2005, Whitley telephoned Flaig's employer, made defamatory statements about Flaig, and requested assurances that Flaig would be terminated from his position of employment (Pl. Am. Compl., ¶ 32).

## C.    The Investigation

On  January  9,  2006,  defendant  Arab  Police  Officer  Brian  Matthews ("Matthews")  and  Arab  Assistant  Police  Chief  Jeff  Bailey  ("Bailey")  "questioned Flaig ... about  robberies which had allegedly occurred in Arab, Alabama (Pl. Am. Compl., ¶ 36).  Matthews asked Flaig about being Catholic, "what he did with 'this Catholic  stuff',  and  whether  or  not  he  worked  for  the  Catholic  Church  (Pl.  Am. Compl., ¶ 37).  Matthews "told Flaig that his vehicle was at the scene of a robbery in Arab, Alabama, and asked Flaig if his newspapers had any ads from Arab.  Matthews told Flaig 'it looks pretty suspicious'" (Pl. Am. Compl., ¶ 38).  Matthews and Bailey also questioned "Flaig's contract employee Randal Pifher ... about robberies which had  allegedly  occurred  in  Arab,  Alabama  and  made  comments  or  asked  Pifher, outside of Flaig's presence, about the Catholic religion (Pl. Am. Compl., ¶¶ 40, 41, 42, 43, 44, 45, 46, 47, 48).

11

## Discussion

### I.     The Trinity News

The Trinity News is never identified as a legal entity, nor are any acts alleged to have been taken against The Trinity News.  Further, to the extent that the amended complaint alleges that the City of Hanceville is no longer publishing its ordinances (presumably, in The Trinity News), the plaintiff alleges no basis for a lawsuit by a newspaper, its publisher, or a private citizen to seek damages for the failure of a city to comply with Code of Alabama, 1975, § 11-45-8.  Therefore, all claims of The Trinity News are dismissed (Counts One through Ten) as are Flaig's claims resulting from the failure of the City of Hanceville and/or the individual Defendants to publish municipal ordinances (Count Eight).

### II.    Equal Protection Claim

Count One of the amended complaint states that "the named Defendants ... attempt[ed] to deny the Plaintiff equal protection under the law based on Plaintiff's free exercise of religion.  Plaintiff was treated differently and an offense against his religion occurred."  Pl. Am. Compl., ¶ 62.  Statements made by Defendants to Flaig "placed Plaintiff on notice that the quality of due process he was likely to receive was substantially flawed."  *Id*.

The very language of Count One evidences a claim that is not ripe for review.

Flaig states that Defendants "attempt" to violate his constitutional right to equal protection under the law and that such conduct put Flaig on notice that "the quality of due process he was likely to receive," presumably at some point in the future, was not commiserate with due process received by others. Flaig critically does not assert that his rights were *actually* violated. A claim alleging an attempt to violate a right where a plaintiff does not state that the attempt resulted in an actual violation of a right does not give rise to a justiciable cause of action. Based upon the language of the amended complaint, any adjudication of Flaig's Equal Protection claim would be tantamount to an impermissible advisory opinion by this Court. Due to Flaig's failure to assert that a right was actually violated, Count One of the amended complaint presents a purely academic question over which this Court lacks jurisdiction. Accordingly, Count One is due to be dismissed as to all Defendants.

## II.    Conspiracy Claims

Under all Counts within the Amended Complaint, Flaig asserts that some or all of the Defendants conspired with one another collectively to commit each and every claim.

> In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. *See Ostrer v. Aronwald,* 567 F.2d 551 (2d Cir.1977); *United States Ex Rel. Simmons v. Zibilich,* 542 F.2d 259 (5th Cir.1976). *See also Black v. United States,* 534 F.2d 524 (2d

Cir.1976); *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975). A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.

*Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).

There is no mention in the amended complaint, beyond the conclusory and vague assertions that a conspiracy occurred, of any specific instances or facts such that the Defendants could be put on notice of the nature of the multiple conspiracies alleged by Flaig. Following a painstakingly careful review of the amended complaint, the Court is at a loss to find even a single specific allegation in support of Flaig's conspiracy claims. The instant action presents exactly the type of conspiracy claims, claims which are void of even the whisper of specificity, that are properly dismissed pursuant to *Fullman*. Accordingly, Flaig's conspiracy claims contained within Counts One through Ten are due to be dismissed against all Defendants to this action.[2]

## III.   42 U.S.C.A. § 1983

The amended complaint enumerates eight separate § 1983 claims against the City of Arab, the City of Hanceville, and the individually named Defendants in both their individual and official capacities.

_____

[2]Count Seven is solely a conspiracy claim and is due to be dismissed against all Defendants.

14

## A.     State Law Claims Asserted Pursuant to 42 U.S.C.A. § 1983

42 U.S.C.A. § 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. *See* 42 U.S.C.A. § 1983; *see also Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (42 U.S.C.A. § 1983 is not a source of rights; rather, it is a means of vindicating federal rights).  As a matter of law, Flaig's claims based on violations of Alabama law asserted through the vessel of § 1983 are not sustainable.  Counts One through Seven of the amended complaint are due to be dismissed against all Defendants as to Flaig's claims asserted for violations of rights established under Alabama law.[3]  Counts Six and Eight of the amended complaint, which are brought pursuant to § 1983, are based entirely upon violations of rights established solely under Alabama law and are, therefore, due to be dismissed against all Defendants.

## B.     Official Capacity Claims

Flaig asserts official capacity claims against Matthews, Richie, Whitley, and

_____

[3]Flaig has also asserted claims for violations of his rights secured by "certain amendments to the Constitution of the United States of America" in each of these counts.  *See* Pl. Am. Compl., ¶¶ 60, 68, 76, 84. 91, and 104.  Flaig does not, at any point, state which amendments to the United States Constitution he relies on in asserting these claims.  Presumably, Flaig, through his attorney, has left it to the Defendants and to the Court to guess which Constitutional provisions are applicable.

Pearce.[4]   Each of these individuals is a municipal officer of either the City of Hanceville or the City of Arab.  Flaig has asserted § 1983 claims collectively against the individual Defendants as well as against both municipalities.

When analyzing the propriety of a plaintiff's assertion of an official capacity claim, pursuant to 42 U.S.C.A. § 1983, against municipal officers and an accompanying § 1983 claim against the municipality itself, the 11th Circuit Court of Appeals held that, because "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity actions against local government officials, because local government units can be sued directly."  *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991).  Therefore, should a § 1983 claim against a municipality fail, a plaintiff may not then turn to a municipal officer for relief through an identical § 1983 claim to that which was asserted against the municipality.

The holding in *Busby* fits squarely within the context of the instant action.  If Flaig proved successful, the relief he seeks can only be afforded by the City of Hanceville and the City of Arab and not by any individually named Defendant in his

---

[4]In his amended complaint, Flaig does not offer any specific allegation of wrongdoing on the part of these individuals.

or her official capacity.

In addition, the United States Supreme Court stated that:

In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court sought to eliminate lingering confusion about the distinction between personal and official capacity suits. We emphasized that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.,* at 165, 105 S.Ct., at 3104 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)).  Suits against state officials in their official capacity therefore should be treated as suits against the State.  473 U.S., at 166, 105 S.Ct., at 3105.  Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361-362 (1991).  Accordingly, Flaig's official capacity claims are duplicative of claims asserted against the City of Hanceville and against the City of Arab and are due to be dismissed (Counts One through Eight).

## C.    Section 1983 Claims Against the City of Hanceville and the City of Arab

"Where a § 1983 claim is asserted against a municipality, only the liberal pleading standards of Rule 8(a)(2) apply." *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 836 (11th Cir. 2004).  Flaig does not offer any allegations specifically against either the City of Hanceville or the City of Arab.  A reading of the amended complaint does not reveal a shred of factual basis for the claims asserted against

either municipality; rather, all facts and claims center around the actions of employees of these municipalities.  None of the claims are premised upon a policy or action by the municipalities themselves.  The amended complaint professes liability on the part of these municipalities solely based on the actions of their employees.

In § 1983 cases filed against municipalities, "a municipality cannot be held liable on a respondeat superior theory but only where a municipal policy or custom caused the constitutional injury." *Id*.  Flaig does not allege that any policy or custom gave rise to a constitutional injury.   Accordingly, as all claims against the municipalities that are based on the theory of respondeat superior, Flaig has failed to state a § 1983 claim for which relief could be granted against either the City of Hanceville or the City of Arab.

### D.    Individual Capacity Claims

As a threshold matter, the Court must undertake the task of determining whether Defendants Whitley, Matthews, Richie, and Pearce are entitled to qualified immunity as to the claims asserted against them in their individual capacities. Qualified immunity is a question of law to be decided by the court prior to trial. Defendants claim the protection of qualified immunity as to every claim in which Flaig seeks to recover under 42 U.S.C. § 1983. The ubiquity of the defense justifies a preliminary discussion of the general principles of qualified immunity.

18

A heightened pleading requirement for § 1983 claims for which qualified immunity is a defense "is the law of this Circuit."  *GNR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998)  The Eleventh Circuit,

> along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is *particularly true* in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*Swann*, 388 F.3d at 838 (quoting *GJR Investments, Inc.*, 132 F.3d at 1367 (11th Cir. 1998)).  *See also Cottone v. Jenne*, 326 F.3d 1352, 1362 n.7 (11th Cir. 2003) ("In examining the factual allegations in a complaint, we must keep in mind the heightened pleading requirement for civil rights cases, especially those involving qualified immunity."); *Dalrymple v. Reno*, 334 F.3d 991 (11th Cir. 2003) (recognizing heightened pleading requirement as the law of the Eleventh Circuit); *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004) (recognizing applicability of heightened pleading standard  to § 1983 cases in which qualified immunity has been asserted by an individual defendant.).  A § 1983 claim which fails to adhere to the heightened pleading standard is properly dismissed.  *See Gonzales v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) ("The complaint must allege the relevant facts with some specificity.  More than mere conclusory notice pleading is

required.  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory ... [courts should be mindful that ] we generally accord official conduct a presumption of legitimacy.") (internal marks and citations omitted).

Section 1983 requires an affirmative causal connection between an official's acts or omissions and the alleged constitutional violation.  *See Swint v. City of Wadley, Ala.*, 51 F.3d 988 (11ᵗʰ Cir. 1995).  It is therefore axiomatic that a § 1983 plaintiff must allege some act or omission on the part of a defendant in order to state a valid claim.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11ᵗʰ Cir. 2003) (internal quotation marks and citations omitted).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."[5]  *Id.* at 1357-58.

_____

[5]Under Alabama law, a determination, when properly analyzed under Eleventh Circuit precedent regarding qualified immunity, that a government official was acting within his or her discretionary authority *per se* entitles the government official to state qualified immunity from all state-law based tort claims which are premised on the actions which gave rise to the § 1983 claims asserted by a plaintiff against that same government official.  *See Lightfoot v. Floyd*, 667 So.2d 56, 63-64 (Ala. 1995).

The Eleventh Circuit, in *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-1267 (11th Cir. 2004), reviewed at length the legal analysis to be followed in determining whether a state official was acting within his discretionary authority:

> Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See 1266 Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties *and* within the scope of this authority." (emphasis added)).

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

> Consider the first prong of the test--whether the official is engaged in a legitimate job-related function. In *Sims v. Metropolitan Dade County,* 972 F.2d 1230 (11th Cir.1992), "we did not ask whether it was within the defendant's authority to suspend an employee for an improper reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline." *Harbert,* 157 F.3d at 1282.

Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities. *See, e.g., Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description.

Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly "furthering the public interest." If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use *excessive* force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests. *See, e.g., Ferraro,* 284 F.3d at 1194 (holding, in an excessive force suit, "there can be no doubt that [the police officer defendant] was acting in his discretionary capacity when he arrested [plaintiff]").

After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function--that is, pursuing his job-related goals--in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. *See, e.g., Harlow,* 457 U.S. at 819 & n. 34, 102 S.Ct. at 2739 & n. 34 (limiting the availability of qualified immunity to situations where "an official's duties legitimately

require action" and to "actions within the scope of an official's duties"). Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Employment by a local, county, state, or federal government is not a *carte blanche* invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.

370 F.3d 1252, 1265 -1267.

"Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

The Supreme Court has established a two-part test to determine the applicability of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier v. Katz*, 533 U.S. 194, 201

(2001).  The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). The "unlawfulness must be apparent" under preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the Supreme Court said, "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. at 202.  Hence, if it is not "clear" that conduct is unlawful, qualified immunity is to be applied.  An officer is entitled to immunity protection as long as he "could have believed" his conduct was lawful.  *Hunter v. Bryan,* 502 U.S. 224, 227 (1991).  To deny immunity, a plaintiff must affirmatively demonstrate that "no reasonably competent officer would have" acted as defendants did. *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Stated differently,

qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is

protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002) (internal marks and citations omitted).

### 1.    The City Council Meeting

Flaig asserts that Defendants Whitley, Richie, and Pearce deprived "the plaintiff" of his Constitutionally protected right of free speech (Count Two), deprived "the plaintiff" of his Constitutionally protected right of freedom of the press (Count Three), deprived "the plaintiff" of his Constitutionally protected right to freedom of assembly (Count Four), and deprived "the plaintiff" of his Constitutionally protected right to freedom from unreasonable search and seizure (Count Five), when he was physically removed from the February 28, 2005, meeting of the Hanceville City Council (hereinafter "Meeting") due to his violation of Hanceville Local Ordinance 492.

Flaig does contest that he was in violation of Ordinance 492 at the time of his removal nor does Flaig contend that Ordinance 492 is unconstitutional either on its face or as applied; rather, Flaig states that he was escorted from the Meeting due to his violation of Ordinance 492.  The basis of his grievances are that others who, in his opinion, violated Ordinance 492 were not removed from the Meeting and that he

suffered injuries at the hands of the police officers who physically removed him from the Meeting.

Whitley, as Mayor of the City of Hanceville, has the authority to assemble the Hanceville City Council and, as the senior executive for the municipality, has a duty to enforce the law. As such, any actions taken by Whitley during the course of a meeting of the Hanceville City Council are within the scope of Whitley's discretionary authority. Furthermore, the factual averments contained within the amended complaint refer only to actions taken by Whitley in her capacity as the Mayor of the City of Hanceville. *See 1266 Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties *and* within the scope of this authority." (emphasis added)).

Richie and Pearce were, on February 28, 2005, police officers employed by the City of Hanceville. It is inherent that a police officer acting, in good faith, to enforce a municipal ordinance is acting within his discretionary authority. *See id*.

Because Whitley, Richie, and Pearce were acting within their discretionary authority, the burden under a qualified immunity analysis is now shouldered upon Flaig to demonstrate that Richie and Pearce are not entitled to qualified immunity.

26

As Flaig has chosen not to respond to these Defendants' Motions to Dismiss, the Court will rely exclusively upon the assertions contained within the amended complaint for its analysis as to whether Flaig has carried his burden.

The Court must first determine whether the facts, as plead by Flaig, establish the complained of constitutional violations.  The relevant facts offered in Flaig's amended complaint are that Richie and Pearce physically removed Flaig, who is the publisher of a newspaper, from the Meeting and that Flaig suffered bruises which were caused by Richie and Pearce.  Flaig makes no mention of any specifics regarding how or under what circumstances his injuries were "caused."  At some point subsequent to the close of the meeting, Flaig was transported, by two members of the Hanceville City Council, to Woodland Hospital for treatment of his bruises.

Flaig's amended complaint is absent of any factual allegation that Whitley was present at the Meeting or that she, in any way, caused Richie and Pearce to physically remove Flaig from the Meeting.  The amended complaint is wanting for mention of a single specific action taken by Whitley at the Meeting which could be reasonably determined to relate to Counts Two through Five.  As to Whitley, Flaig has not met the heightened pleading requirement for claims asserted pursuant to § 1983 for which qualified immunity is a defense.  As Flaig has failed to plead *any facts* which could give rise to a constitutional violation by Whitley based upon Flaig's removal from the

Meeting, Flaig has failed to establish a constitutional violation, and Whitley is entitled to qualified immunity. Accordingly, all claims against Whitley, in her individual capacity, which are premised upon occurrences at the meeting are due to be dismissed (Counts Two through Five).

Flaig has not put forth any allegations which, if true, could possibly give rise to claims against Richie and Pearce for a violation of the Plaintiff's protected rights to freedom of speech, freedom of the press, or freedom of assembly. In actuality, Flaig does not offer specific allegations directed against Richie or Pearce as to these claims. The amended complaint falls short of the heightened pleading requirement in that Flaig asserts that all defendants, acting in concert with one another, committed unspecified acts which led to the deprivation of these rights guaranteed to Flaig by "certain amendments" to the Constitution of the United States. Accordingly, Flaig has failed under his burden to show that his allegations give rise to a constitutional violation as to these claims, and Richie and Pearce are entitled to qualified immunity as to Counts Two through Four of the amended complaint.

Flaig's claim of unreasonable search and seizure against Richie and Pearce is likewise untenable (Count Five). "The Fourth Amendment secured the people against not all, but only unreasonable searches and seizures of their persons, houses, papers, and effects." *Martin v. U.S.*, 155 F.2d 503, 505 (5th Cir. 1946). In viewing the facts

28

in the light most favorable to the Plaintiff, Flaig was not arrested when he was escorted from the meeting, he was not searched, and nothing was taken from his person. The Fourth Amendment right to be free from unreasonable searches and seizures is simply not applicable to the instant facts. Flaig has not established that the facts of this case give rise to a violation of his constitutional right to be free from unreasonable searches and seizures. Accordingly, Richie and Pearce are entitled to qualified immunity as to Flaig's claim premised upon unreasonable search and seizure (Count Five).[6]

## III.    State Law Claims

Flaig asserts the state law claims of Intentional Infliction of Emotional Distress[7] and Slander against all Defendants. All claims over which this Court has original jurisdiction are due to be dismissed. Pursuant to 28 U.S.C.A. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over any remaining state law

---

[6]Flaig does not, at any point, assert a claim for unreasonable force against Richie and Pearce. Accordingly, the Court will not offer analysis into such a claim. Where a plaintiff is represented by counsel, as is Flaig, it is not up to the Court to identify and analyze any possible claims which could have been asserted by a plaintiff but, for whatever reason, were not. The assumption of this court is that, had Flaig wished to assert a claim for unreasonable force, he would have done so with an appropriate specificity, especially in light of an Order of this Court directing Flaig to plead all claims with particularity.

[7]Under Alabama law, the tort of intentional infliction of emotional distress is commonly and traditionally known as a tort claim of outrage.

claims asserted by Flaig against the Defendants to this action.[8]  As such, all state law claims asserted by Flaig against all Defendants are due to be dismissed without prejudice (Counts Nine and Ten).  The parties are reminded of the tolling provision found in 28 U.S.C.A. § 1367(d).

## IV.   Motion for Sanctions

Defendants, the City of Hanceville and Whitley, have filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11.

An appellate court reviews all aspects of the district court's Rule 11 determination for an abuse of discretion.  *Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)).

Rule 11(b) of the Federal Rules of Civil Procedure imposes a duty upon attorneys and parties to refrain from filing or pursuing frivolous claims.  *See* Fed.R.Civ.P. 11(b).  Rule 11 sanctions are proper: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; <u>or</u> (3) when the party files

---

[8]Upon a thorough review of the state-law based tort claims asserted by Flaig against all Defendants, this court concludes that there is no independent basis for federal jurisdiction resulting from these claims.

a pleading in bad faith for an improper purpose. *See Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996).  Rule 11(c) allows a court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation," which may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id*.

The objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).  A court must follow a two part test: (1) whether the party's claims are objectively frivolous; <u>and</u> (2) whether the person who signed the pleadings should have been aware that they were frivolous.  *Alderman,* 158 F.3d at 524.

Although sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts," they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law.  *Alderman,* 158 F.3d at 524.  The purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression. *Id*.  The grant of summary judgment, in and of itself, does not mean that an action is frivolous or warrants the imposition of sanctions.  *Id.*

31

Rule 11 emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable. *Ruszala v. Walt Disney World Co.*, 132 F.Supp.2d 1347, 1352 (M.D. Fla. 2000). "A litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Ruszala*, 132 F.Supp.2d at 1352 (quoting Fed.R.Civ.P. 11, advisory committee's notes) (internal marks omitted). "Rule 11 stresses the need for some prefiling inquiry." *Worldwide Primates, Inc.,* 87 F.3d at 1254 (quoting *Mike Ousley Productions, Inc. v. WJBF-TV,* 952 F.2d 380, 382 (11th Cir.1992)).

In addition, Rule 11 mandates procedural requirements that, if ignored, prove fatal to a movant under the rule.

> Rule 11(c)(1)(A) calls for a motion for sanctions to be made separately from other motions. Further, it may not be presented to [the] Court for twenty-one (21) days after the service of the motion for sanctions to the opposing party, in order to provide the party filing the motions to dismiss time to withdraw its challenged paper. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the

revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

*Rondolino v. Provident Life and Acc. Ins. Co.*,  1994 WL 143066, *2 (M.D. Fla. 1994) (citing Fed. R. Civ. P. 11).

Finally, "Rule 11 is not a fee-shifting statute ... [a] movant under Rule 11 has no entitlement to fees or any other sanction." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 934 (1991). "Imposition of sanctions on the attorney rather than, or in addition to, the client is sometimes proper since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel." *Worldwide Primates, Inc.*, 87 F.3d at 1254 (internal marks omitted).

According to the parties' papers, the City of Hanceville and Whitley did not comply with the procedural directive of Rule 11(c)(1)(A) requiring service of the Motion for Sanctions, in accordance with Fed. R. Civ. P. 5, on the opposing party twenty-one days prior to filing the motion with the Court.  The Certificate of Service attached to the instant motion indicates that a true and correct copy of the motion was served on Flaig when the Motion for Sanctions was electronically filed with the Court on May 2, 2006.  The Defendants' two letters to Flaig dated February 15, 2006, and April 10, 2006, warn Flaig of these Defendants' intention to seek sanctions pursuant to Rule 11; however, the letters were not accompanied by a copy of the Motion for

Sanctions.  These letters, while sent more than twenty-one days prior to the filing of the Rule 11 motion with the court, are procedurally insufficient to allow the Defendants to escape the "safe harbor" provisions of Rule 11.  Due to the City of Hanceville's and Whitley's failure to adhere to Fed. R. Civ. P. 11(c)(1)(A), the Motion for Sanctions is due to be denied.

A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this 20th day of September, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

34